UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 24-24613-CIV-MORENO

TODD HEADLEY,

       Plaintiff,

vs.

LFG NFTS, CORP., a Delaware corporation,

       Defendant.
_____/

## ORDER GRANTING DEFENDANT LFG NFTS, CORP.'S MOTION TO COMPEL ARBITRATION

THIS CAUSE came before the Court upon Defendant LFG NFTs, Corp.'s Motion to Compel Arbitration or Alternatively to Dismiss for Improper Venue or Transfer Venue (**D.E. 6**).

THE COURT has considered the motion, the opposition, the reply, the pertinent portions of the record, and is otherwise fully advised in the premises. Defendant LFG NFTs, Corp. ("Autograph") seeks an order compelling arbitration of Plaintiff Todd Headley's claims against it. Autograph argues that a valid and enforceable arbitration agreement exists and, as such, this Court should enforce it. In response, Plaintiff argues that he opted out of the agreement. As explained below, the Court agrees that a valid and enforceable arbitration agreement exists between these parties. Accordingly, the Court compels the parties to resolve these claims in arbitration.

### I. BACKGROUND

Plaintiff Todd Headley sued Autograph and its Chief Executive Officer Dillon Rosenblatt, alleging that they made false promises to Plaintiff about Autograph's non-fungible

tokens ("NFTs"). Between August 2021 and June 2023, Plaintiff allegedly purchased 857 NFTs from Autograph through non-party DraftKings' virtual marketplace. These NFTs were tied to particular "A-List" celebrities. Autograph allegedly marketed and promoted each NFT as providing exclusive access to certain events featuring the celebrity tied to the NFT. Plaintiff alleges that Rosenblatt made similar representations and promises to Plaintiff and other prospective purchasers. These Defendants marketed and promoted these NFTs through Autograph's website, social media websites, and third-party instant messaging and Voice over Internet Protocol social platforms, such as Discord virtual communities and chat rooms. Plaintiff purchased NFTs tied to Tom Brady, Tiger Woods, Derek Jeter, Simone Biles, Tony Hawk, and Rafael Nadal, but he claims that he was never granted access to the promised exclusive events with these celebrities.

Plaintiff filed a three-count complaint in Florida state court. Defendants removed and filed the instant motions. Plaintiff brings claims for (1) fraudulent inducement against Autograph and Rosenblatt; (2) breach of contract against Autograph; and (3) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, against Autograph.

The Federal Arbitration Act governs the enforceability of an arbitration agreement. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (citation omitted). The Act "embodies a liberal federal policy favoring arbitration agreements and seeks to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." *Id.* (citation modified) (citation omitted). "[C]ourts must rigorously enforce arbitration agreements according to their terms,

2

including terms that specify with whom the parties choose to arbitrate their disputes." *Id.* (citation modified) (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)).

Where the parties have agreed to arbitrate, the court must compel arbitration and stay the case. *See* 9 U.S.C. §§ 3–4. Under the Federal Arbitration Act, a district court's analysis is three-fold: (1) whether a valid written arbitration agreement exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate has not been waived. *Osterer v. BAM Trading Servs. Inc.*, 753 F. Supp. 3d 1289, 1293 (S.D. Fla. 2024) (citation omitted). Plaintiff argues that he and Autograph never agreed to arbitrate because Plaintiff opted out of the agreement.[1] Accordingly, the Court analyzes the arbitration agreement and the sufficiency of Plaintiff's opt-out notice.

Under Florida law, "[t]he party seeking enforcement of an agreement has the burden of establishing that an enforceable agreement exists." *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. Dist. Ct. App. 2019) (citation omitted). A summary-judgment like standard is appropriate for this inquiry. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). A district court may conclude "as a matter of law" that the parties entered (or did not enter) into an arbitration agreement "only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Id.* (citation modified) (quoting Fed. R. Civ. P. 56(a)).

Autograph's records indicate that Plaintiff created an account on August 15, 2021. Decl. of Alexander Chan, ECF 6-1 at 99 ¶ 7. When he did so, he was presented with the following message: "By using our service you agree to the Terms of Service and acknowledge our Privacy Policy." Ex. C; *id.* ¶ 8. Plaintiff does not dispute that he is bound by Autograph's Terms of Service. Indeed, he attached them to his complaint. *See* Ex. D, ECF 1-1 at 68–92.

---

[1] Neither party argues waiver. There is, however, some dispute about whether the Court should decide arbitrability. As is the case with any contract, "parties can form multiple levels of agreements concerning arbitration." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). Parties may agree to arbitrate the merits of a dispute as well as "threshold arbitrability questions." *Id.* (citation omitted). Here, the arbitration agreement does just that—unequivocally delegating "threshold questions of arbitrability" of claims to an arbitrator. Ex. 3, ECF 6-1 at 125. The Court will thus not decide whether Plaintiff's claims are arbitrable.

Two versions of the Terms are relevant for our purposes. The first is the version Plaintiff attached to his complaint, which were revised on September 2, 2022 (over one year after Plaintiff created his account). *See id.* at 69. The second version is the August 7, 2021 revised Terms, which Autograph provided with its motion. *See* Ex. 3, ECF 6-1 at 108–129. This version was in effect when Plaintiff created his account. The differences between the two versions are immaterial for our purposes because Section 11 (the section containing the arbitration agreement) is the same in both versions. *Compare* Ex. 3, ECF 6-1 at 125–26 *with* Ex. 5, ECF 6-1 at 153–54.

After an informal dispute resolution process, Section 11 states that "any remaining dispute, controversy, or claim (collectively, 'Claim') relating in any way to your use of the Company's services, Company NFTs and/or products, including the Services, will be resolved by arbitration." Ex. 3, ECF 6-1 at 125. And any such arbitration will be "final and binding." *Id.*

Section 11.5 states that a user may opt-out of the arbitration agreement if he sends a "written notice of [his] decision to opt-out" via email "or to the U.S. mailing address listed in the 'How to Contact Us' section of these Terms." *Id.* at 126. The address provided in the August 7, 2021 Terms is "631 Wilshire Blvd., Santa Monica, CA 90401." *Id.* at 129. The address in the September 2, 2022 revised Terms is "3130 Wilshire Blvd., Santa Monica, CA 90403." Ex. 5, ECF 6-1 at 156.

Plaintiff claims that he sent an opt-out notice via regular U.S. mail from Miami to Autograph in Southern California on September 8, 2022. *See* Pltf.'s Decl., ECF 15-1 at 3 ¶¶ 3–4. However, Plaintiff's notice is addressed to "3130 **W.** Wilshire Blvd, Santa Monica, CA 90403. *See* Opt-Out Notice, ECF 15-1 at 8 (emphasis added); *see also id.* at 3 ¶ 3. This is not the address provided in either revised version of the Terms.

4

Without addressing this discrepancy, Plaintiff devotes time to challenging Alexander Chan, Autograph's Director of Engineering, and his sworn statement that "[a]ccording to Autograph's records, Plaintiff Todd Headley did not provide written notice to opt out under Section 11.5." Decl., ECF 6-1 at 102 ¶ 13. Plaintiff argues that he is entitled to the presumption that Autograph received his opt-out letter (Opp., ECF 15 at 6), even though it was improperly addressed. Autograph disagrees and submits a declaration by its general counsel, Jonathan Gottlieb, who describes Autograph's mail procedures in detail and attests to having conducted a "diligent search of Autograph's records" only to conclude "to the best of [his] ability" that Autograph does not have Plaintiff's opt-out letter. Decl., ECF 21-1 ¶¶ 5–8.

But the opt-out provision does not turn on Autograph's receipt of the notice. *See Deverze v. Uber Techs., Inc.*, No. 1:19-4988-CIV, 2020 WL 10111001, at *7 (N.D. Ga. May 7, 2020). Rather, the onus is on the user to properly address and send the notice for the opt-out to be effective. *See* Ex. 3, ECF 6-1 at 126 ("The notice must be *sent*." (emphasis added)). Tracking Section 11.5's plain language, it is immaterial whether Autograph received Plaintiff's notice.

Plaintiff's opt-out notice is ineffective also because it is untimely. Section 11.5 requires the notice to be sent "within thirty (30) days of your registering to use the Services or agreeing to these Terms." Ex. 3, ECF 6-1 at 126. An extension of this timeframe will be provided only "if this Section 11, pertaining to arbitration, is materially amended hereafter, within 30 days of such amendment being effective)." *Id.* As discussed above, there was no change to Section 11 between the August 7, 2021 revised Terms and the September 2, 2022 revised Terms. Headley agreed to be bound by the arbitration agreement on August 15, 2021—the day he created an account on Autograph's website. As such, his opt-out notice was due on September 14, 2021, thirty days later. Plaintiff's notice was not sent until almost one year later.

5

In the end, Plaintiff has produced no competent evidence upon which the Court can conclude that he successfully opted out of the arbitration agreement. Because Plaintiff's notice was both incorrectly addressed and untimely, the Court deems it ineffective. Therefore, the Court concludes as a matter of law that the parties have agreed to arbitrate and compels arbitration of the claims Plaintiff asserts against Autograph.

Accordingly, it is

**ADJUDGED** that Defendant LFG NFTs, Corp.'s Motion to Compel Arbitration **(D.E. 6)** is **GRANTED**. Plaintiff and Autograph are **COMPELLED** to proceed with arbitration pursuant to Section 11 of the Terms of Service.

DONE AND ORDERED in Chambers at Miami, Florida, this _10_ of September 2025.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record